**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| NORTH AMERICAN INSURANCE AGENCY, INC., d/b/a INSURICA, ROBERT C. BATES, L.L.C., and COMMERCIAL INSURANCE SERVICES L.L.C., <br><br> Plaintiffs, <br><br> vs. <br><br> ROBERT C. BATES, JOEY D. DILLS, AND COMMERCIAL INSURANCE BROKERS, L.L.C., a State of Oklahoma Corporation, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) Case No. CIV-12-544-M ) ) ) ) ) ) ) ) |

**ORDER**

Before the Court is plaintiffs' Motion for Temporary Injunction, filed August 8, 2012. On August 16, 2012, defendants filed their responses, and on August 20, 2012, plaintiffs filed their replies to defendants' responses. Based upon the parties' submissions, the Court makes its determination.

I.  Introduction

Defendant Robert C. Bates ("Bates") formed "Robert C. Bates, Inc." ("Bates, Inc.") in 1977 and operated an insurance agency under that name for many years. In June 1997, Bates, as an independent insurance agent, entered into a "Producer Agreement" with Bates, Inc. The Producer Agreement provided that Bates, Inc. would provide Bates with an array of services, including office space, accounting services, clerical and policy writing services, invoicing of Bates' customers, and postage and telephone services and provided that Bates would have access to any and all records maintained by Bates, Inc. that are pertinent to the customers of Bates and unrestricted use of any

office machinery. The Producer Agreement also provided that Bates would remain the owner of all policy copies and records of expirations pertaining to his customers.

On November 19, 1999, plaintiff North American Insurance Agency, Inc., d/b/a INSURICA ("NAIA") and Bates, acting on behalf of Bates Holding, Inc., entered into a Purchase and Sale Agreement whereby NAIA became the 100% owner of Robert C. Bates, L.L.C. As part of the Purchase and Sale Agreement, Bates, Inc. was merged into RCB, L.L.C. RCB, L.L.C. was then renamed Robert C. Bates, L.L.C. ("Bates, L.L.C."), which is the current name of the company. Bates became a member of Bates, L.L.C., a member of the Board of Managers, and President and Chief Operating Officer of Bates, L.L.C.

On May 11, 2012, Bates submitted his letter of resignation. Further, on May 12, 2012, Bates, L.L.C. received a letter from Bates, signed by all the producers, except for, according to Bates, one who was out-of-town and another who was ill, indicating their intent to leave Bates, L.L.C. Bates, L.L.C. agreed, at the producers' request, to allow the producers other than Bates to remain on the premises through August 10, 2012. On May 14, 2012, following Bates' resignation, plaintiffs' representatives met with Bates and requested he vacate the premises. The parties, through counsel, subsequently agreed that Bates could stay on premises pending an attempt to mediate the situation. Mediation was held on May 31, 2012, but the parties were unable to resolve the dispute.

On June 1, 2012, plaintiffs, through counsel, renewed their demand that Bates leave the premises. Plaintiffs agreed that Bates could remove his personal possessions over the course of the weekend and noted that Bates was only entitled to policy copies and his expiration list. Upon return to Bates, L.L.C.'s office on June 4, 2012, plaintiffs' employees found that hundreds of files had been removed, including not only files relating to Bates' customers but to those of other producers as

well.  On June 8, 2012, plaintiffs, through counsel, expressly requested the return of the records taken from Bates, L.L.C.  Plaintiffs agreed they would provide Bates with copies of the current policies and termination dates and that Bates could have access to the records as needed and make copies of those he desired, provided confidentiality issues were addressed.  On June 9, 2012, Bates, through counsel, refused to return the records, although Bates offered access to these records and copies at Bates, L.L.C.'s expense.  On June 20, 2012, plaintiffs' counsel contacted Bates' counsel to again demand the return of the files.  These discussions continued on June 21, 2012.  On June 25, 2012, Bates returned the hard copies of the files to Bates, L.L.C.

On February 10, 2003, defendant Joey D. Dills ("Dills") entered into a "Producer Agreement" with Bates, L.L.C.  On April 1, 2009, Dills entered into a Purchase and Sale Agreement relating to his "personal lines" policies.  On June 26, 2012, Dills emailed a representative for plaintiffs, indicating he would take original hard copy and electronic files relating to his customers. The following day, counsel for plaintiffs advised counsel for Dills of Dills' contentions and demanded that Dills not remove or copy the electronic or hard copy files.  On July 13, 2012, Dills told the President of Bates, L.L.C. that he had customer files in his possession which he intended to copy.  Dills has since returned the original files; however, Dills stated that he intends to take those files when he vacates the premises, leaving only a disk with scanned copies for Bates, L.L.C.  Other producers also moving to Commercial Insurance Brokers, L.L.C. have similarly stated they have and will continue to copy hard copy files and electronic files and emails from the Bates, L.L.C. server. Employees of Bates, L.L.C. have also determined that electronic documents have been deleted from Bates, L.L.C.'s server.

Virtually every policy and certificate of insurance issued by Bates since the purchase of Bates, L.L.C. show Bates, L.L.C. or Bates, L.L.C. and INSURICA as the agent(s) of record. The policies are issued by insurance carriers pursuant to contracts between Bates, L.L.C. and the insurance carrier. Further, INSURICA and Bates, L.L.C. are both licensed as producers under the Oklahoma Producers Act and are subject to the Oklahoma Insurance Department document retention requirements.

In 2004, INSURICA formed Commercial Insurance Services, L.L.C., a wholly owned subsidiary, which purchased the assets of Commercial Insurance Services, Inc. Commercial Insurance Services, L.L.C. is an insurance agency, with the primary functions of soliciting and servicing insurance clients, many of whom are in the transportation industry. Commercial Insurance Services, L.L.C. operates throughout the state of Oklahoma, including Tulsa, as well as in Kansas.

Commercial Insurance Brokers, L.L.C. was registered as an entity with the Oklahoma Secretary of State's office on May 16, 2012. Commercial Insurance Brokers, L.L.C. is an insurance agency, operating in the Tulsa area. Bates and Dills, as well as other former Bates, L.L.C.'s producers, have become members of Commercial Insurance Brokers, L.L.C. and/or have expressed an intent to become members of Commercial Insurance Brokers, L.L.C.

II.   Discussion

Plaintiffs move this Court for a temporary injunction enjoining defendants from certain actions. Specifically, plaintiffs request the following:

>    (1)   the Court to enjoin Bates and Commercial Insurance Brokers, L.L.C. from using the names, "Robert C. Bates," "RCB" or any other variant of defendant's name or surname in the corporate or trade name of a corporation or other entity engaged in the insurance or related business or in furtherance of their insurance related activities.

(2) the Court to enjoin Bates and Commercial Insurance Brokers, L.L.C. from using the names "Commercial Insurance Brokers, L.L.C." or any other variant in the corporate or trade name of a corporation or other entity engaged in the insurance or related business or in furtherance of their insurance activities;

(3) the Court to order defendant Dills and Commercial Insurance Brokers, L.L.C. to return all electronic documents taken from plaintiffs' servers, computers or other devices;

(4) the Court to order all defendants to return all originals and copies of hard copy files and to order the following regarding defendants making copies of the hard copy files:

    (a) for customers who have provided Bates or other Commercial Insurance Brokers, L.L.C. agents with agent of record letters which have been accepted by the carriers, Bates and/or Commercial Insurance Brokers, L.L.C. are allowed to make copies at their expense of the current year records for those customers;

    (b) for customers who have provided Bates or other Commercial Insurance Brokers, L.L.C. agents with agent of record letters which have been accepted by the carriers, but the carriers do not recognize "mid-term" changes of the agent of record, Bates and/or Commercial Insurance Brokers, L.L.C. are allowed to make copies at their expense of the current year records for those customers; and

    (c) for customers who have not yet provided Bates or other Commercial Insurance Brokers, L.L.C. agents with agent of record letters, Bates and/or Commercial Insurance Brokers, L.L.C. are not allowed to make copies unless the producers obtain agent of record letters accepted by the carriers in the future and then Bates and/or Commercial Insurance Brokers, L.L.C. are allowed to make copies at their expense of the current year records for those customers; and

(5) the Court to enjoin Dills from engaging in any competition or otherwise failing to assist plaintiffs in maintaining their business relations with personal lines customers.

A. <u>Temporary Injunction Standard</u>

A movant seeking a temporary injunction must show: (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001). "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Id.* (internal citation omitted). Whether to grant a temporary injunction rests within the sound discretion of the trial court. *United States v. Power Eng'g Co.*, 191 F.3d 1224, 1230 (10th Cir. 1999).

Additionally, the Tenth Circuit employs a "modified requirement as to the likelihood of success" if "the movant has established the other three requirements for a preliminary injunction." *Fed. Lands Legal Consortium v. United States*, 195 F.3d 1190, 1194-95 (10th Cir. 1999). Under the modified standard, a movant may satisfy the likelihood of success requirement "by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation . . . ." *Id.*

Additionally, "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 2948.1 (2d ed. 1995).

> Determining whether irreparable harm exists can be a difficult and close question. We have noted that [t]he concept of irreparable harm . . . does not readily lend itself to definition, nor is it an easy burden to fulfill. In defining the contours of irreparable harm, case law indicates that the injury must be both certain and great, and that it must not be merely serious or substantial.

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1262 (10th Cir. 2004) (internal quotations and citations omitted).

    B.    <u>Use of Bates' Name</u>

Plaintiffs move this Court to enjoin Bates and Commercial Insurance Brokers, L.L.C. from using the names, "Robert C. Bates," "RCB" or any other variant of Bates' name or surname in the corporate or trade name of a corporation or other entity engaged in the insurance or related business or in furtherance of their insurance related activities. Having carefully reviewed the parties' submissions, the Court finds that plaintiffs have not shown irreparable harm to them if the injunction is denied. Specifically, the Court finds that plaintiffs have not shown that any injury in relation to the use of Bates' name is certain. In fact, in his response and in his affidavit, Bates unequivocally states that he has not used, has not endeavored to use, and does not in the future intend to use the names "Robert C. Bates" or "RCB" or any other variant of his name or surname in the corporate or trade name of any corporation or other entity engaged in the insurance or related business. Plaintiffs have not presented any evidence to show that Bates' statement is untrue. Accordingly, the Court finds that plaintiffs' request for this Court to enjoin the use of Bates' name should be denied.

    C.    <u>Use of the Name of Commercial Insurance Brokers, L.L.C.</u>

Plaintiffs also move this Court to enjoin Bates and Commercial Insurance Brokers, L.L.C. from using the names "Commercial Insurance Brokers, L.L.C." or any other variant in the corporate or trade name of a corporation or other entity engaged in the insurance or related business or in furtherance of their insurance activities. Plaintiffs assert that there is a likelihood of confusion in the use of the name "Commercial Insurance Brokers, L.L.C." Further, plaintiffs assert that allowing

the use of the name "Commercial Insurance Brokers, L.L.C." would pose significant harm to plaintiffs that can not be measured monetarily.

The Tenth Circuit has identified the following factors that are relevant to whether there is a likelihood of confusion:

> (a) the degree of similarity between the designation and the trademark or trade name in
>   (i) appearance;
>   (ii) pronunciation of the words used;
>   (iii) verbal translation of the pictures or designs involved;
>   (iv) suggestion;
> (b) the intent of the actor in adopting the designation;
> (c) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other;
> (d) the degree of care likely to be exercised by purchasers.

*Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 925 (10th Cir. 1986) (internal quotations and citation omitted). Other than noting that the names "Commercial Insurance Services" and "Commercial Insurance Brokers" are similar, that both are insurance agencies, and that Commercial Insurance Services, L.L.C. has clients in Tulsa, plaintiffs do not address the above factors at all. In fact, plaintiffs do not present any evidence to support a finding of likelihood of confusion.[1] Further, plaintiffs do not present any evidence to support a finding that allowing the use of the name "Commercial Insurance Brokers, L.L.C." will pose significant harm for plaintiffs that simply cannot be measured monetarily – plaintiffs simply make this conclusory statement without any further support.

---

[1] The Court would note that in their motion, plaintiffs state that Commercial Insurance Brokers L.L.C. is an insurance agency, operating in the same area and seeking the same or similar clients as Bates, L.L.C. not Commercial Insurance Services, L.L.C.

Accordingly, the Court finds that plaintiffs have not shown irreparable harm to them if the injunction is denied. The Court, thus, finds that plaintiffs' request for this Court to enjoin the use of Commercial Insurance Brokers, L.L.C.'s name should be denied.

### D.   Hard Copy Files and Computer Files

Plaintiffs request the Court to order defendants Dills and Commercial Insurance Brokers, L.L.C. to return all electronic documents taken from plaintiffs' servers, computers or other devices and to order all defendants to return all originals and copies of hard copy files, with special provisions for customers who have provided Bates or other Commercial Insurance Brokers, L.L.C. agents with agent of record letters which have been accepted by the carriers. Having carefully reviewed the parties' submissions, the Court finds that plaintiffs have shown irreparable harm to them if they do not have the hard copy files and computer files. Specifically, plaintiffs have shown that they are required to keep copies of these records pursuant to the Oklahoma Insurance Code and that if they did not have these records, they would not be in compliance with the Oklahoma Insurance Code and could face possible sanctions. Additionally, plaintiffs have shown that as the listed agent of record they have certain obligations to both the insurance carriers and their customers and that they need these records in order to be able to service their customers.

The Court further finds that the requested injunction, modified to allow defendants to also maintain copies of the files, would not be adverse to the public interest. Specifically, the Court finds that it would be in the consumers' interest to maintain a continuity of service. Additionally, the Court finds that the threatened injury to plaintiffs outweighs the injury to defendants, particularly in light of the fact that defendants will also be able to have a copy of the files.

Finally, having concluded that plaintiffs have satisfied all three of the preceding factors, the Court concludes the "modified" likelihood of success requirement should apply. *See Fed. Lands*, 195 F.3d at 1194-95. Having carefully reviewed the parties' submissions, the Court finds that "questions going to the merits are so serious, substantial, difficult, and doubtful as to make [the issues raised in this case] ripe for litigation . . . ." *Id.* Specifically, the Court finds that based upon the case law and the factual background in this case, the issues of who owns the files at issue and whether the Computer Fraud and Abuse Act was violated are so serious, substantial, difficult and doubtful as to make this case ripe for litigation.

Accordingly, the Court finds that defendants should be ordered to return to plaintiffs all electronic documents taken from plaintiffs' servers, computers or other devices. However, in order to enable defendants to also be able to service their customers, the Court finds that defendants are entitled to retain a copy of any of these electronic documents that relate to their customers. Additionally, the Court finds that defendants should be ordered to return to plaintiffs the hard copy files that they have taken. However, in order to enable defendants to also be able to service their customers, the Court finds that defendants are entitled to retain a copy of any of these hard copy files that relate to their customers.

E.     Non-competition of Dills

Plaintiffs request the Court to enjoin Dills from engaging in any competition or otherwise failing to assist plaintiffs in maintaining their business relations with personal lines customers. In his response and in his affidavit, Dills states that he has no intention and has expressed no intention

of competing with any of the plaintiffs for personal lines insurance business.[2]  Plaintiffs have not presented any evidence to show that Dills' statement is untrue.  Accordingly, the Court finds that plaintiffs have not shown that any injury in relation to Dills' competition with personal lines customers is certain, and, thus, the Court finds that plaintiffs have not shown irreparable harm to them if the injunction is denied.  Accordingly, the Court finds that plaintiffs' request for this Court to enjoin Dills from competing in relation to personal lines customers should be denied.

III.	Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART plaintiffs' Motion for Temporary Injunction [docket no. 62] and ORDERS defendants to return to plaintiffs all electronic documents taken from plaintiffs' servers, computers or other devices and to return to plaintiffs the hard copy files that they have taken.  Defendants, however, may retain a copy of any of these electronic documents that relate to their customers and a copy of any hard copy files that relate to their customers.

**IT IS SO ORDERED this 23rd day of August, 2012.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] In his response, Dills vehemently objects to being enjoined from competing with Bates, L.L.C. for commercial lines clients or business.  Plaintiffs, however, are not seeking to enjoin Dills from competing with them in relation to commercial lines clients or business.