## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NORTH AMERICAN INSURANCE AGENCY, INC., d/b/a INSURICA, ROBERT C. BATES, L.L.C., and COMMERCIAL INSURANCE SERVICES L.L.C., | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-12-544-M |
| ROBERT C. BATES, JOEY D. DILLS, AND COMMERCIAL INSURANCE BROKERS, L.L.C., A STATE OF OKLAHOMA CORPORATION; WALT PETTIT; KIM BUKER; W. SAM PETTIT; DEBBIE MORRIS; WALT PETTIT CPCU, INC.; AND COMMERCIAL BROKERAGE SERVICES, INC., | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Before the Court is defendants Robert C. Bates, Commercial Insurance Brokers, LLC, Walt Pettit, Kim Buker, W. Sam Pettit, Debbie Morris, Walt Pettit CPCU, Inc., and Commercial Brokerage Services, Inc.'s (collectively "Moving Defendants") Motion to Dismiss Second Amended Complaint, filed July 30, 2013. On August 20, 2013, plaintiffs filed their response, and on August 27, 2013, Moving Defendants filed their reply.

I.      Introduction[1]

In June 1997, defendant Robert C. Bates ("Bates"), as an independent insurance agent, entered into a "Producer Agreement" with Robert C. Bates, Inc. ("Bates, Inc."). On November 19, 1999, plaintiff North American Insurance Agency, Inc., d/b/a INSURICA ("NAIA") and Bates, acting on behalf of Bates Holding, Inc., entered into a Purchase and Sale Agreement ("PSA") whereby NAIA became the 100% owner of Robert C. Bates, L.L.C. As part of the PSA, Bates, Inc. was merged into RCB, L.L.C. RCB, L.L.C. was then renamed Robert C. Bates, L.L.C. ("Bates, L.L.C."), which is the current name of the company. Under the PSA, NAIA paid Bates almost $7,000,000.00 for Bates, L.L.C., with the last payment made on or about January 28, 2006.

Bates, L.L.C. is formed of independent contractors, including Bates, defendant Joey D. Dills ("Dills"), defendant Walt Pettit ("W. Pettit"), defendant Kim Buker ("Buker"), and defendant W. Sam Pettit ("S. Pettit") (collectively, the "Producers"), who have each entered into individual contracts with Bates, L.L.C., for the purpose of selling insurance on behalf of the company. Pursuant to the PSA, Bates became a member of Bates, L.L.C., a member of the Board of Managers, and President and Chief Operating Officer of Bates, L.L.C., and served continually in these positions until May 11, 2012. Since the purchase of Bates, L.L.C., NAIA has invested substantial financial resources in the company, including, but not limited to, significant funds utilized in advertising, promoting, funding, maintaining, and operating Bates, L.L.C.

Since early 2007, Bates has indicated his intent to leave Bates, L.L.C. and recruit producers from Bates, L.L.C. to leave with him, all with the intention of starting a competing insurance agency

---

[1]The facts set forth in this introduction are based upon plaintiffs' Second Amended Complaint and plaintiffs' First Amended Complaint, which was expressly adopted in the Second Amended Complaint.

under his name and allegedly to cause financial ruin to Bates, L.L.C.  On May 11, 2012, Bates submitted his letter of resignation to Bates, L.L.C.  Also on May 11, 2012, Bates again advised members of Bates, L.L.C. that he was starting his own insurance agency in direct competition with Bates, L.L.C.  Bates also advised that the other Producers had been directed by Bates not to discuss with NAIA management and/or employees their intentions with regard to their current or future status with Bates, L.L.C.  Bates further advised that Mr. Ross and other NAIA employees could not personally meet with the Producers.

On June 1, 2012, after it became apparent that amends could not be achieved between Bates and Bates, L.L.C., Bates was advised and permitted by plaintiffs to enter Bates, L.L.C.'s offices and remove his personal possessions.  On or about June 2, 2012, Bates allegedly removed hundreds of files from Bates, L.L.C.'s premises, including files relating to Bates' customers, as well as files of other Producers.  Plaintiffs allege that Bates copied these files with the intent to improperly utilize the information contained therein in furtherance of marketing and enticing new business and/or renewing insurance applications for financial gain on his behalf and/or the financial benefit of defendant Commercial Insurance Brokers, L.L.C. ("CIB").  CIB is the entity created by Bates and other Producers to be a rival insurance agency to Bates, L.L.C.

On May 14, 2012, plaintiffs NAIA and Bates, L.L.C. filed the instant action against defendant Bates seeking temporary and permanent injunctive relief pursuant to the Lanham Act, 15 U.S.C. § 1116, and the Oklahoma Deceptive Trade Practices Act, Okla. Stat. tit. 78, § 54 ("ODTPA").  On July 3, 2012, plaintiffs NAIA, Bates, and Commercial Insurance Services L.L.C. ("CIS") filed their First Amended Complaint against defendants Bates, Dills, and CIB.  In their First Amended Complaint, plaintiffs allege the following claims: (1) violation of the Lanham Act under

15 U.S.C. § 1125(a) as against all defendants, (2) unfair competition under the common law of Oklahoma as against Bates and CIB, (3) trademark infringement in violation of Oklahoma common law as against Bates and CIB, (4) violation of the ODTPA as against Bates and CIB, (5) violation of the Computer Fraud and Abuse Act ("CFAA") as against all defendants, (6) breach of fiduciary duties as against Bates only, (7) breach of contract as against Bates only, (8) tortious interference with prospective economic advantage as against Bates only, and (9) anticipatory breach of contract as against Dills only.

After obtaining leave of Court, on July 3, 2013, plaintiffs filed their Second Amended Complaint adding W. Pettit, Buker, S. Pettit, Debbie Morris ("Morris"), Walt Pettit CPCU, Inc., and Commercial Brokerage Services, Inc. as defendants and adding causes of action for unjust enrichment and civil conspiracy. In their Second Amended Complaint, plaintiffs, pursuant to Federal Rule of Civil Procedure 10(c), expressly adopt their First Amended Complaint. Plaintiffs, in their Second Amended Complaint, allege the following claims: (1) violation of the Lanham Act under 15 U.S.C. § 1125(a), (2) unfair competition under Oklahoma common law, (3) trademark infringement in violation of Oklahoma common law, (4) violations of the ODTPA, (5) violations of the CFAA, (6) breach of fiduciary duties, (7) breach of contract, (8) tortious interference with prospective economic advantage, (9) anticipatory breach of contract,[2] (10) unjust enrichment, and (11) civil conspiracy. The Moving Defendants now move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss all claims made against them in the Second Amended Complaint for failure to state a claim.

---

[2]In their Second Amended Complaint, plaintiffs state that this cause of action against Dills is superseded by the breach of contract claim, as the breach is no longer anticipatory. Accordingly, it appears that this cause of action is now moot.

II.    Standard for Dismissal

Regarding the standard for determining whether to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the United States Supreme Court has held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).  Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* at 679 (internal quotations and citations omitted).  Additionally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.* at 678 (internal quotations and citations omitted).  A court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotations and citation omitted).  Finally, "[a] court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

III.     Discussion

Moving Defendants move the Court to dismiss all claims made against them in the Second Amended Complaint pursuant to Rule 12(b)(6).  In their response, plaintiffs contend that the Court should summarily deny the motion to dismiss as to Bates and CIB, except for the unjust enrichment and civil conspiracy claims, because Bates and CIB previously answered the First Amended Complaint which contained all of the claims alleged in the Second Amended Complaint, except the unjust enrichment and civil conspiracy claims.  Because "an amended complaint supercedes an original complaint and renders the original complaint without legal effect," *Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007) (internal quotations and citations omitted), the Court finds that even though plaintiffs expressly adopt the First Amended Complaint, Bates and CIB have not waived their right to move to dismiss all of the claims asserted against them in plaintiffs' Second Amended Complaint by having previously answered the First Amended Complaint.  Additionally, the Court finds that even if Bates and CIB had waived their right to move to dismiss these claims, they could effectively seek the same relief through a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

In their reply, Moving Defendants also assert that plaintiffs' Second Amended Complaint is improperly pled, by its being replete with, and dependent upon, an improper incorporation of plaintiffs' First Amended Complaint.  "[P]ursuant to Rule 10(c), specific allegations of the prior complaint may be referenced or incorporated by the amended complaint, but only if reference to allegations in the prior complaint is direct and specific." *Fullerton v. Maynard*, No. 91-7002, 1991 WL 166400, at *2 (10th Cir. Aug. 29, 1991).  Plaintiffs specifically and directly adopt their First

Amended Complaint. The Court, thus, finds that plaintiffs' Second Amended Complaint is properly

pled pursuant to Federal Rule of Civil Procedure 10(c).

    A.    <u>Lanham Act Claim</u>

> Section 43(a) of the Lanham Act, prohibiting the use of false designations of origin, protects against service mark infringement even if the mark has not been federally registered. To prevail in an action for unfair competition under § 43(a), a plaintiff must establish that (1) her mark is protectable, and (2) the defendant's use of [an identical or similar] mark is likely to cause confusion among consumers.

*Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004) (internal quotations and

citations omitted).

    Moving Defendants contend plaintiffs' Lanham Act claim should be dismissed for failure

to state a claim. Specifically, Moving Defendants contend that plaintiffs have not sufficiently

alleged that the names Robert C. Bates, L.L.C. and Commercial Insurance Services L.L.C. were

protected or protectable. Moving Defendants further contend that plaintiffs have not shown any

likelihood of confusion.[3]

    Having carefully reviewed plaintiffs' Second Amended Complaint,[4] and presuming all of

plaintiffs' factual allegations are true and construing them in the light most favorable to plaintiffs,

the Court finds that plaintiffs have set forth sufficient factual allegations to state a claim for violation

---

[3]The Court would note that in their motion to dismiss, Moving Defendants appear to be making arguments more appropriate for a motion for summary judgment. Many of their arguments go beyond the pleadings and are contrary to the presumption that the factual allegations in a complaint are true for purposes of ruling on a motion to dismiss.

[4]When the Court references plaintiffs' Second Amended Complaint, this necessarily includes those portions of the First Amended Complaint expressly incorporated in the Second Amended Complaint.

of the Lanham Act.  Specifically, the Court finds that plaintiffs have sufficiently alleged that the

names Robert C. Bates, L.L.C. and Commercial Insurance Services L.L.C. are protectable.  In their

complaint, plaintiffs specifically allege that the name Robert C. Bates, L.L.C. is a protected mark

and specifically allege that NAIA purchased the name Robert C. Bates, L.L.C.  *See* First Amended

Complaint at ¶¶ 23, 30.  Additionally, plaintiffs allege that INSURICA has held itself out for years

to the public under the Robert C. Bates, L.L.C. name and has extensively advertised and promoted

the company using the Robert C. Bates, L.L.C. name.  *See* First Amended Complaint at ¶ 12.  These

allegations, taken as true, could support a finding that the Robert C. Bates, L.L.C. name has acquired

secondary meaning.  Further, plaintiffs allege that Commercial Insurance Services L.L.C. operates

both state-wide and nation-wide and has engendered customer loyalty and recognition of the CIS

name.  *See* First Amended Complaint at ¶ 24.

The Court further finds that plaintiffs have sufficiently alleged that the Moving Defendants'

use of an identical or similar mark is likely to cause confusion among consumers.  Specifically,

plaintiffs allege that CIB's use of its name "in commerce, in conjunction with the fact that a number

of CIB Producers are former Producers of Robert C. Bates L.L.C. and have been associated with

Robert C. Bates L.L.C. for years, has resulted in confusion and deception as to the affiliation,

connection, or association of CIB with Robert C. Bates L.L.C. and/or as to the origin, sponsorship,

or approval of CIB's services by Robert C. Bates L.L.C."  First Amended Complaint at ¶ 25.

Additionally, plaintiffs allege:

> Plainly the establishment of a competing agency in the same city with
> any similar name, particularly when staffed by producers wrongfully
> recruited from Plaintiff, will lead to confusion.  Additionally, the use
> of documents marked with Robert C. Bates L.L.C.'s letterhead and
> logo in furtherance of obtaining business will cause insurance carriers

8

> to mistake the services provided by Defendants as services affiliated
> with or sponsored by Robert C. Bates, L.L.C.

First Amended Complaint at ¶ 29.

Accordingly, the Court finds that plaintiffs' Lanham Act claim should not be dismissed.

B.      Unfair Competition Claim

Moving Defendants contend that plaintiffs have failed to put forward specific, non-conclusory factual allegations to make their unfair competition claim plausible.  Specifically, Moving Defendants contend that plaintiffs have offered no factual allegations to support a claim that any defendant has adopted or threatened to use the names Commercial Insurance Brokers, LLC and Robert C. Bates for the purpose of obtaining the benefit of any goodwill or reputation of plaintiffs. Moving Defendants further contend that plaintiffs have wholly failed to present any evidence to support a finding of likelihood of confusion.

Having carefully reviewed plaintiffs' Second Amended Complaint, and presuming all of plaintiffs' factual allegations are true and construing them in the light most favorable to plaintiffs, the Court finds plaintiffs have set forth sufficient factual allegations to state an unfair competition claim.  Specifically, in their complaint, plaintiffs reference statements of intention to use the Robert C. Bates name in a competing insurance business and set forth specific instances of use of the Robert C. Bates name by various defendants.  Additionally, as set forth above, the Court finds that plaintiffs have sufficiently alleged that the Moving Defendants' use of an identical or similar mark is likely to cause confusion among consumers.

Accordingly, the Court finds plaintiffs' unfair competition claim should not be dismissed.

C.    Trademark Infringement Claim

> The elements of common law trademark or service mark infringement are similar to those required to prove unfair competition under § 43(a) of the Lanham Act.  Among other things, a plaintiff must establish a protectable interest in its mark, the defendant's use of that mark in commerce, and the likelihood of consumer confusion.

*Donchez*, 392 F.3d at 1219.

Moving Defendants assert that plaintiffs have wholly failed to allege facts to establish that plaintiffs have a protectable mark, that any defendant used any protected or protectable mark belonging to plaintiffs, and/or that Moving Defendants caused any such mark to be used in a manner as to create any likelihood of consumer confusion.  As set forth above, the Court has found that plaintiffs have set forth sufficient factual allegations showing that the names Robert C. Bates, L.L.C. and Commercial Insurance Services L.L.C. are protectable and that the Moving Defendants' use of an identical or similar mark is likely to cause confusion among consumers.  Additionally, presuming all of plaintiffs' factual allegations are true and construing them in the light most favorable to plaintiffs, the Court finds that plaintiffs have set forth sufficient factual allegations that Moving Defendants used the protectable mark(s) belonging to plaintiffs.  In the Second Amended Complaint, plaintiffs set forth specific instances of use of the Robert C. Bates' name by various defendants.[5]

Accordingly, the Court finds that plaintiffs' trademark infringement claim should not be dismissed.

---

[5]In their motion to dismiss, Moving Defendants attack the factual basis of these specific instances.  However, for purposes of ruling on the motion to dismiss, the Court must presume the factual allegations regarding these instances of use of the Robert C. Bates' name are true.

D.      ODTPA Claim

The ODTPA provides:

>   A person engages in a deceptive trade practice when in the course of
>   business, vocation, or occupation, the person:
>   1.      Passes off goods or services as those of another;
>   2.      Knowingly makes a false representation as to the source,
>           sponsorship, approval, or certification of goods or services;
>   3.      Knowingly makes a false representation as to affiliation,
>           connection, association with, or certification by another;
>   4.      Uses deceptive representations or designations of geographic
>           origin in connection with goods or services;
>   5.      Knowingly makes a false representation as to the
>           characteristics, ingredients, uses, benefits or quantities of
>           goods or services or a false representation as to the
>           sponsorship, approval, status, affiliation, or connection of a
>           person therewith;
>   6.      Represents that goods are original or new if they are not;
>   7.      Represents that goods or services are a particular standard,
>           quality, or grade, or that goods are a particular style or model,
>           if they are another;
>   8.      Disparages the goods, services, or business of another by
>           false or misleading representation of fact;
>   9.      Advertises goods or services which differ from those offered
>           for sale in the advertisements;
>   10.     Advertises goods or services with intent not to supply
>           reasonably expectable public demand, unless the
>           advertisement discloses a limitation of quantity;
>   11.     Makes false or misleading statements of fact concerning the
>           reasons for, existence of, or amounts of price reductions;
>   12.     Advertises the price of an item after deduction of a rebate
>           unless the actual selling price is advertised and clear and
>           conspicuous notice is given in the advertisement that a mail-
>           in rebate is required to achieve the lower net price;
>   13.     Misrepresents the geographic location of the supplier by
>           listing a fictitious business name or an assumed business
>           name in a local telephone directory . . . ;
>   14.     Lists a fictitious business name or assumed business name in
>           a directory assistance database . . . .

Okla. Stat. tit. 78, § 53(A).

In their Second Amended Complaint, plaintiffs allege the following specifically in relation to their deceptive trade practices claim:

> 7.     In addition to the claims set out in the First Amended Complaint against those Defendants, which apply equally to Producer Defendants here, Plaintiffs seek damages and permanent injunctive relief against all Producer Defendants for the reasons set forth therein.   Plaintiffs further incorporate the specific instances of improper use of the Robert C. Bates name identified in Paragraph 4 above.

Second Amended Complaint at ¶ 7.   In their First Amended Complaint, plaintiffs allege the following specifically in relation to their deceptive trade practices claim:

> 41.     The allegations of ¶¶ 1-40 are incorporated by reference herein.
> 42.     Bates' and CIB's conduct as described herein constitutes unfair, unconscionable or deceptive methods, acts or practices in the conduct of a trade or commerce as provided under the Oklahoma Deceptive Trade Practices Act, 78 O.S. § 51, *et seq.*
> 43.     Bates' and CIB's unlawful actions have caused or may cause in the future Robert C. Bates, L.L.C. and CIS to suffer irreparable injury, result in unjust enrichment to Bates and CIB, and have caused and/or will cause, unless enjoined by this Court, substantial and irreparable harm to Robert C. Bates, L.L.C. and CIS for which they have no adequate remedy at law.

First Amended Complaint at ¶¶ 41-43.

Moving Defendants assert that plaintiffs fail to state a claim for deceptive trade practices. Specifically, Moving Defendants contend that plaintiffs' Second Amended Complaint fails to even identify which of the fourteen categories listed in § 53 of the ODTPA constitutes the alleged deceptive trade practice.  Moving Defendants further contend that the Second Amended Complaint makes no specific, non-conclusory factual allegations of what identifiable wrongdoing would fall into which category.

Having carefully reviewed the Second Amended Complaint, the Court finds that plaintiffs have not set forth sufficient non-conclusory allegations to state an ODTPA claim. Specifically, the Court finds that plaintiffs' ODTPA claim is devoid of any allegations as to what specific alleged wrongdoing defendants engaged in related to this claim and which specific category or categories of the ODTPA constitutes the alleged deceptive trade practice(s) at issue. Defendants are simply left to guess and/or assume the basis for plaintiffs' ODTPA claim. This is insufficient to state a claim.

Accordingly, the Court finds that plaintiffs' ODTPA claim should be dismissed.

E.      CFAA Claim

Under the CFAA, "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). Further, a person who

> (2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains –
>
>     *        *        *
>
> (C) information from any protected computer;
>
>     *        *        *
>
> (5)(A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

violates the CFAA. 18 U.S.C. § 1030(a)(2)(C),(5)(A).

Moving Defendants assert that plaintiffs have failed to put forward specific, non-conclusory factual allegations to make their CFAA claim plausible. Specifically, Moving Defendants assert that plaintiffs have failed to present sufficient factual allegations to allow the Court to draw the reasonable inference that Moving Defendants are liable for the misconduct alleged. Having carefully reviewed plaintiffs' Second Amended Complaint, the Court finds that plaintiffs have set

13

forth sufficient factual allegations to state a CFAA claim.  The Court finds that plaintiffs have made specific and detailed factual allegations which clearly allow this Court to draw the reasonable inference that Moving Defendants are liable for the misconduct alleged.  Specifically, in the Second Amended Complaint, plaintiffs allege, in detail, that the Producer Defendants have destroyed numerous emails and documents containing proprietary and confidential business information in violation of the CFAA.  *See* Second Amended Complaint at ¶¶ 10, 11.  Plaintiffs further allege that the Producer Defendants were not authorized to delete such emails, data, and other information from plaintiffs' computers.  *See* Second Amended Complaint at ¶ 12.  Additionally, plaintiffs specifically allege that the computers are protected computers as they are computers used in and affecting interstate commerce and communication.  *See* Second Amended Complaint at ¶ 9.  Finally, the Court finds that it is clearly alleged that each Producer Defendant, individually, committed the actions identified in the allegations that resulted in a violation of the CFAA.

Accordingly, the Court finds that plaintiffs' CFAA claim should not be dismissed.

F.     Breach of Fiduciary Duty Claim

In Oklahoma, in order to recover on a claim for breach of fiduciary duty, a plaintiff must establish: (1) a fiduciary relationship existed between the plaintiff and the defendant that created a fiduciary duty that the defendant owed to the plaintiff; (2) the defendant breached the fiduciary duty to the plaintiff; and (3) the breach of the fiduciary duty was the direct cause of damages to plaintiff.  *See* OUJI-Civil – Instr. No. 26.1.  In their First Amended Complaint, regarding their breach of fiduciary duty claim against Bates, plaintiffs allege, in part:

> Bates, through his role as both a member of the Board of Managers, and as President and the chief operating officer of Robert C. Bates L.L.C., committed clear breaches of fiduciary duties recognized under Oklahoma law.  Bates <u>while in the employ of Robert C. Bates</u>

14

> <u>L.L.C. and being paid by the company</u>, acted directly adverse to the
> company by intentionally undertaking efforts to create a
> new company designed to compete directly with and against Robert C.
> Bates L.L.C.  In further violation of his fiduciary duties, again while
> in the employ and on the payroll of Robert C. Bates L.L.C., Bates
> actively recruited employees and agents of Robert C. Bates, L.L.C.
> to undermine the company and join CIB.

First Amended Complaint at ¶ 55 (emphasis in original).  In their Second Amended Complaint,

regarding their breach of fiduciary duty claim against Morris, plaintiffs allege:

> Defendant Debbie Morris acted in violation of her fiduciary duties
> while a member of the Board of Managers of Robert C. Bates, L.L.C.,
> in assisting Defendant Bates in the formation and development of the
> new entity, or, at a minimum, to inform Robert C. Bates, L.L.C. of
> Defendant Bates' intent and actions, while an officer and Member of
> the Board of Managers of Robert C. Bates, L.L.C., to compete against
> Robert C. Bates, L.L.C.

Second Amended Complaint at ¶ 19.[6]

Moving Defendants contend that plaintiffs do not allege that Bates actually followed through

with or committed any acts while in the employ of plaintiffs that would violate any existing duty.

Moving Defendants further contend that plaintiffs' allegations against Morris are vague and tenuous

and cannot support any claim.  Having carefully reviewed the Second Amended Complaint, and

presuming all of plaintiffs' factual allegations are true and construing them in the light most

favorable to plaintiffs, the Court finds plaintiffs have set forth sufficient factual allegations to state

a breach of fiduciary duty claim.  Contrary to Moving Defendants' assertions, plaintiffs do

specifically allege that Bates committed acts that would violate his fiduciary duty to plaintiffs.

Specifically, plaintiffs allege that Bates intentionally undertook efforts to create a new company

---

[6]There are two paragraphs that are numbered as 19.  The above quote is from the first
paragraph 19.

designed to compete directly with and against Robert C. Bates, L.L.C. and actively recruited employees and agents of Robert C. Bates, L.L.C. to undermine the company and join CIB. Additionally, the Court finds that plaintiffs' allegations against Morris are not vague and tenuous. Plaintiffs specifically allege that Morris assisted Bates in the formation and development of the new company and/or failed to inform plaintiffs of Bates' actions.

Moving Defendants also contend that plaintiffs' breach of fiduciary duty claim is barred by the applicable statute of limitations. Having carefully reviewed the parties' submissions, the Court finds that there are factual issues as to when the statute of limitations would have begun to run on plaintiffs' breach of fiduciary duty claim and, thus, resolution of the statute of limitations issue is not appropriate at the motion to dismiss stage.

Accordingly, the Court finds that plaintiffs' breach of fiduciary duty claim should not be dismissed.

G. Breach of Contract Claim

Plaintiffs allege breach of contract violations against various defendants on two different contracts: (1) the Producer Agreements, and (2) the PSA and related documents. In their breach of contract claim predicated on the Producer Agreements, plaintiffs allege that defendants violated their contractual obligations "not to engage in any competitive business which may hinder or detract from the COMPANY or its business activities."[7] Moving Defendants contend that plaintiffs' allegations that Bates engaged in "efforts" and "attempts" to set up a competing agency and that the Producer Defendants "participated" in said "efforts" and "attempts" are not sufficient to form the basis for a breach of contract claim.

---

[7]This contractual obligation is contained in Section IV of the Producer Agreements.

16

Having carefully reviewed the Second Amended Complaint, the Court finds plaintiffs have set forth sufficient factual allegations to state a breach of contract claim based upon the Producer Agreements.  Specifically, the Court finds that plaintiffs' allegations include more than defendants' "efforts" and "attempts."  For example, plaintiffs allege that the "Producer Defendants actively participated in the creation of CIB and the transfer of customers from Robert C. Bates, L.L.C. to CIB", "while continuing to operate pursuant to the Producer Agreements".  Second Amended Complaint at ¶ 20.

Moving Defendants further contend that plaintiffs' breach of contract claim based upon the PSA and other related documents is barred by the statute of limitations and should be dismissed. Having carefully reviewed the parties' submissions, the Court finds that there are factual issues regarding Moving Defendants' statute of limitations defense and, thus, resolution of the statute of limitations issue is not appropriate at the motion to dismiss stage.

Accordingly, the Court finds that plaintiffs' breach of contract claim should not be dismissed.

H.     Tortious Interference with Prospective Economic Advantage Claim

In their Second Amended Complaint, plaintiffs allege the following specifically in relation to their tortious interference with prospective economic advantage claim:

> 22.     In addition to the claims set out in the First Amended Complaint against Defendant Bates, Plaintiffs assert that Producer Defendants and Defendants Morris and Dills, wrongfully interfered with Plaintiffs' prospective economic advantage.
> 23.     Plaintiffs had a valid business and contractual relationship with their employees and customers.
> 24.     While operating pursuant to the terms of their Producer Agreements, which expressly required that they "not to engage in any competitive business which may hinder or detract from [Robert C. Bates, L.L.C.] or its business activities," Producer Defendants and Defendant Dills (and Debbie Morris while an employee of Robert C. Bates, L.L.C.), upon information and belief and subject to a

17

reasonable opportunity for further investigation and discovery,
actively participated in the creation of CIB, the solicitation of Robert
C. Bates, L.L.C. employees, and the transfer of customers from
Robert C. Bates, L.L.C. to CIB.

25.     These Defendants were aware of the economically viable
relationships between Robert C. Bates, L.L.C. and its employees and
customers.

26.     In spite of such knowledge, these Defendants acted
intentionally and used improper and unfair means to interfere with
these relationships, and Plaintiff have suffered damages as a direct
and proximate cause of these actions.

Second Amended Complaint at ¶¶ 22-26.  In their First Amended Complaint, plaintiffs allege the

following specifically in relation to their tortious interference with prospective economic advantage

claim:

62.     Plaintiffs had a valid business and contractual relationship
with the Producers and employees.

63.     Bates's actions described herein while a Member of the Board
of Managers, President and the chief operating officer of the
Company, was and is well aware of this economically viable
contractual relationship between the producers/employees and the
Company.

64.     In spite of his vast knowledge of the operations of Robert C.
Bates L.L.C. and its contractual relationships with producers, Bates
acted intentionally and used improper and unfair means to interfere
with these relationships and the company has suffered damages as a
direct and proximate cause of these actions.

First Amended Complaint at ¶¶ 62-64.

Moving Defendants contend that under Oklahoma law no action may lie for tortious

interference where the subject contract is an "at will" contract and plaintiffs' tortious interference

claim must, therefore, be dismissed.   While there is no Oklahoma Supreme Court authority directly

recognizing such a claim in the at-will employment context, "lower Oklahoma courts have

recognized the cause of action without hesitation."  *Harman v. Okla. ex rel. N. Okla. Bd. of Regents*,

No. CIV-07-327-C, 2007 WL 1674205, at *3 (W.D. Okla. June 7, 2007).  For example, the

Oklahoma Court of Civil Appeals has held:

> In the evolution of the tort of interference with the employment
> contractual relationship in Oklahoma, there is nothing to suggest that
> the tort would not apply in cases of interference with an at-will
> contract of employment when the party interfering acts without
> privilege.  The focus, then, is not on the type of employment contract,
> but rather on the rights, purpose, means and intent of the party
> interfering.

*McNickle v. Phillips Petroleum Co.*, 23 P.3d 949, 951 (Okla. Civ. App. 1999).  *See also Fulton v.*

*People Lease Corp.*, 241 P.3d 255, 264 (Okla. Civ. App. 2010).  Based upon numerous decisions

of the Oklahoma Court of Civil Appeals, the Court finds that under Oklahoma law an action may

lie for tortious interference where the subject contract is an "at will" contract.

Although plaintiffs title their claim as tortious interference with prospective economic

advantage, a closer review of this claim reveals that it is both a tortious interference with contractual

relations claim (with respect to contractual relationships with the producers) and a tortious

interference with prospective economic advantage claim (with respect to relationships with

customers).  Under Oklahoma law, a tortious interference with contractual relations claim requires

a plaintiff to prove that: (1) the plaintiff had a business or contractual right with which there was

interference; (2) the interference was malicious and wrongful, and that such interference was neither

justified, privileged nor excusable; and (3) damage was proximately sustained as a result of the

complained of interference.  *See Green Bay Packaging, Inc. v. Preferred Packaging, Inc.*, 932 P.2d

1091, 1096 (Okla. 1996).  Under Oklahoma law, a tortious interference with prospective economic

advantage claim requires a plaintiff to prove: (1) the existence of a valid business relation or

expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) an

intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the party whose relationship has been disrupted.  *See Gonzalez v. Sessom*, 137 P.3d 1245, 1249 (Okla. Civ. App. 2006).

Having carefully reviewed the Second Amended Complaint, and presuming all of plaintiffs' factual allegations are true and construing them in the light most favorable to plaintiffs, the Court finds plaintiffs have not set forth sufficient factual allegations to state either a tortious interference with contractual relations claim or a tortious interference with prospective economic advantage claim.  Specifically, the Court finds that plaintiffs have set forth only conclusory allegations regarding the wrongful nature of the interference and the resulting damage.  Plaintiffs simply allege that defendants acted intentionally and used improper and unfair means to interfere with these relationships. Plaintiffs provide no specific factual allegations regarding which employees' and which customers' relationships with plaintiffs were interfered with, what improper and unfair means defendants used to interfere with the relationships, what specific damage was caused, and how the alleged interference caused the alleged damages.

Accordingly, the Court finds that plaintiffs' tortious interference claim should be dismissed.

I.       Unjust Enrichment Claim

Under Oklahoma law, "before a party may recover unjust enrichment, there must be an enrichment to another coupled with a resulting injustice."  *Teel v. Pub. Serv. Co. of Okla.*, 767 P.2d 391, 398 (Okla. 1985) (superseded by statute on other grounds).  Plaintiffs based their unjust enrichment claim upon the following: defendants Bates, Morris, and W. Pettit have and are receiving benefit both from: (1) the purchase of RCB, L.L.C., which was predicated on the inclusion of producer commissions as income and accounts receivable in the valuation of the company, and (2)

now, having left the company and created a rival agency, those same producer commissions.  *See*

plaintiffs' Response to Defendants' Motion to Dismiss Second Amended Complaint [docket no.

131] at 22.  In their Second Amended Complaint, plaintiffs allege the following specifically in

relation to their unjust enrichment claim:

> 28.     As shareholders of Bates Holding, Inc., Defendants Bates,
> Pettit and Morris directly benefited from the sale of RCB, L.L.C. (the
> predecessor to Robert C. Bates, L.L.C.)
> 29.     The Purchase and Sale Agreement (at ¶ 5.10) explicitly
> referenced and attached the company's December 31, 1999 financial
> statement, which included producer revenues as accounts receivable.
> It further provided: "The Financial Statements are complete and
> correct in all material respects and accurately present and described
> the operations of the Company and RCB of the dates and during the
> periods indicated therein [and] fairly and accurately present the
> financial status of the Company and RCB."
> 30.     Defendants Bates, Pettit and Morris are now receiving the
> benefits, through salary, commission or otherwise, of these same
> accounts receivable which were included in the Purchase and Sale
> Agreement as accounts receivable of Robert C. Bates, L.L.C., and for
> which Defendant Bates, Pettit and Morris were compensated through
> the Purchase and Sale Agreement, and thus have been unjust
> enriched.
> 31.     Plaintiffs are entitled to receive compensation for the
> monetary benefits currently received by Defendants Bates, Pettit and
> Morris arising from those accounts previously represented as
> receivables in the Purchase and Sale Agreement.

Second Amended Complaint at ¶¶ 28-31.

Having carefully reviewed the above allegations, as well as the entirety of the Second

Amended Complaint, the Court finds that plaintiffs have not set forth sufficient allegations to state

an unjust enrichment claim.  Specifically, the Court finds that while plaintiffs contend in their

response that their unjust enrichment claim is based upon defendants Bates, W. Pettit, and Morris'

receipt of producer commissions after they left Bates, L.L.C. and started a rival company, in their

Second Amended Complaint plaintiffs do not allege that future producer commissions were a part

of the sale of the company and that the terms of the sale included Bates, L.L.C.'s continued right to receive the producer commissions for years to come. Additionally, plaintiffs do not allege that the statement in the PSA that "The Financial Statements are complete and correct in all material respects and accurately present and described the operations of the Company and RCB of the dates and during the periods indicated therein [and] fairly and accurately present the financial status of the Company and RCB" was false. Finally, in their Second Amended Complaint, plaintiffs only make the conclusory statement that defendants Bates, W. Pettit, and Morris have been unjustly enriched; they do not provide any specifics regarding the alleged injustice of defendants Bates, W. Pettit, and Morris receiving their producer commissions.

Accordingly, the Court finds that plaintiffs' unjust enrichment claim should be dismissed.

J.      Civil Conspiracy Claim

> Actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.

*Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158, 175 (Okla. 2008) (internal quotations and citations omitted).

Having carefully reviewed the Second Amended Complaint, and presuming all of plaintiffs' factual allegations are true and construing them in the light most favorable to plaintiffs, the Court finds plaintiffs have set forth sufficient allegations to state a civil conspiracy claim. Specifically, the Court finds that plaintiffs have alleged (1) two or more persons – plaintiffs have alleged all individual defendants conspired; (2) an object to be accomplished – establishing a competing agency and transferring customers to that agency; (3) a meeting of minds on the object or course of action

22

– the individual defendants acted in concert with a specific goal; (4) one or more unlawful acts –

violations of Bates and Morris' fiduciary duties; and (5) damages as a proximate result – plaintiffs

have alleged they have suffered damages as a direct and proximate cause of the individual

defendants' actions.

Accordingly, the Court finds that plaintiffs' civil conspiracy claim should not be dismissed.

IV.   Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS IN PART and DENIES IN

PART Moving Defendants' Motion to Dismiss Second Amended Complaint [docket no. 125] as

follows:

> (A)   The Court GRANTS the motion to dismiss as to plaintiffs' ODTPA claim, tortious interference claim, and unjust enrichment claim, and
>
> (B)   The Court DENIES the motion to dismiss as to plaintiffs' Lanham Act claim, unfair competition claim, trademark infringement claim, CFAA claim, breach of fiduciary duty claim, breach of contract claim, and civil conspiracy claim.

**IT IS SO ORDERED this 22nd day of November, 2013.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE