# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NORTH AMERICAN INSURANCE AGENCY, INC., d/b/a INSURICA, ROBERT C. BATES, L.L.C., and COMMERCIAL INSURANCE SERVICES, L.L.C., | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. CIV-12-544-M ) |
| ROBERT C. BATES, COMMERCIAL INSURANCE BROKERS, L.L.C., A STATE OF OKLAHOMA CORPORATION; WALT PETTIT; KIM BUKER; W. SAM PETTIT; DEBBIE MORRIS; WALT PETTIT CPCU, INC.; and COMMERCIAL BROKERAGE SERVICES, INC., | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**ORDER**

This case is scheduled for trial on the Court's August 2014 trial docket.

Before the Court is plaintiffs' Motion for Summary Judgment, filed June 3, 2014. On July 1, 2014, defendants filed their response, and on July 8, 2014, plaintiffs filed their reply. Also before the Court is defendants' Motion for Summary Judgment, filed June 2, 2014. On July 1, 2014, plaintiffs filed their response, and on July 8, 2014, defendants filed their reply. Based upon the parties' submissions, the Court makes its determination.

I. Background

Defendant Robert C. Bates ("Bates") formed Robert C. Bates, Inc. in 1977. On November 19, 1999, plaintiff North American Insurance Agency, Inc., d/b/a Insurica ("Insurica") and Bates, acting on behalf of Bates Holding, Inc., entered into a Purchase and Sale Agreement ("PSA"),

whereby Insurica became the 100% owner of plaintiff Robert C. Bates, L.L.C. As a part of the PSA, Robert C. Bates, Inc. was merged into RCB, L.L.C. RCB, L.L.C. was then renamed Robert C. Bates, L.L.C. The PSA also provided Robert C. Bates, L.L.C. the right to exclusive use of the Robert C. Bates, L.L.C. name. Further, Bates became a member of Robert C. Bates, L.L.C., a member of the Board of Managers, and President of Robert C. Bates, L.L.C. and served in such capacities until his resignation on May 11, 2012. Defendant Debbie Morris ("Morris") was also a manager of Robert C. Bates, L.L.C. until she resigned on May 11, 2012.

On June 11, 1997, Bates entered into a written contract titled "Producer Agreement," with Robert C. Bates, Inc. All of the other producers also entered into substantially similar producer agreements with Robert C. Bates, Inc.[1] Pursuant to the producer agreements, the producers were independent contractors. Under the producer agreements, Robert C. Bates, Inc. provided the following services to the producers:

> COMPANY agrees to provide [producer] with office space within the overall offices of the COMPANY and to further provide the following services: (a) COMPANY will have [provider] designated and licensed as a Policy Writing Agent for any and all companies used by COMPANY in the conduct of its insurance business, provided, such is not contrary to the agency licensing laws of the State of Oklahoma. COMPANY will attempt to secure representation with any insurance company duly licensed to engage in the insurance business within the State of Oklahoma that [producer] needs to have available to him for the sale and placement of insurance. (b) COMPANY agrees to render to [producer] as soon as possible at the end of each month a record by customer, company, and commissions of all insurance written by [producer] during the month. [Producer] agrees to turn over to COMPANY all checks received from his customers for the payment of insurance premiums written through COMPANY immediately upon receipt thereof. (c)

---

[1] Insurica's purchase of Robert C. Bates, L.L.C. included the purchase of all of the producer agreements.

> COMPANY agrees to provide [producer] with clerical and policy writing services of the type regularly used by the COMPANY and all the facilities of any insurance company that has licensed COMPANY to represent it in any phase of the sale and service of any form of insurance. (d) COMPANY shall provide a complete accounting service which includes the preparation of customer invoices; monthly customer statements; records of production by customer; amount of commission; and any and all other statistical records that are regularly provided for COMPANY and necessary for [producer's] conduct of business. (e) COMPANY agrees to provide [producer] access to any and all records maintained by COMPANY that are pertinent to the customers of [producer] and [producer] is to have unrestricted use of any office machinery used by COMPANY in the conduct of its insurance business. (f) COMPANY shall provide all postage and telephone expenses, including long distance expenses, necessary in the conduct of [producer's] business.

Section III of Producer Agreement, an exemplar of which is attached as Exhibit 12 to Defendants' Motion for Summary Judgment. Additionally, under the producer agreements, the producers agree "not to engage in any competitive business which may hinder or detract from the COMPANY or its business activities." Section IV of Producer Agreement. The producer agreements also provide the following as to compensation:

> As compensation for the services rendered by [producer] to the COMPANY, the COMPANY shall pay [producer] in the following manner:
> (a) [producer] agrees to pay COMPANY a fee of [a certain]% on Personal Lines and [a certain]% on Commercial Lines of all commissions earned by [producer] from the sale and/or renewal of any insurance, including but not limited to, any form of fire, casualty, bonds and marine, life, health, accident, group, or credit insurance.

Section V of Producer Agreement. Regarding policy ownership, the producer agreements provide, in pertinent part:

> [Producer] will remain the owner of all policy copies and records of expirations pertaining to his customers; and agrees to forward all commissions and fees from agent/broker activities to be deposited to the COMPANY account, for distribution in accordance with this contract.

Section VI of Producer Agreement. Finally, with respect to termination of the producer agreements, the agreements provide:

> Either party to this Agreement may terminate this Agreement by giving the other party ninety (90) days written notice of his or its desire to do so. Said written notice to be postage prepaid and addressed to the COMPANY and/or [producer] at their last known address.

Section X of Producer Agreement.

On Friday, May 11, 2012, Bates and Morris resigned. On May 14, 2014, the remaining producers gave Robert C. Bates, L.L.C. their individual 90-day notices of their termination of their producer agreements. In a May 14, 2012 letter to Bates, Insurica instructed Bates to vacate his office immediately and stated that it would not honor the 90-day termination period of his Producer Agreement and would not provide the administrative services under the Producer Agreement. Insurica honored the 90-day termination period with all of the other producers. After all the producers gave their notices of termination, virtually all of the staff and employees who had been handling the day-to-day business at Robert C. Bates, L.L.C. eventually left, sporadically over the next few months.

On May 16, 2014, Bates formed defendant Commercial Insurance Brokers, L.L.C. ("CIB"), an insurance company in Tulsa. CIB did not begin active operations as an insurance company until the 90-day termination period had ended. Bates and all other producers who resigned from Robert

C. Bates, L.L.C. have become members of CIB. Further, the staff and employees who left Robert C. Bates, L.L.C. all began working for CIB after they resigned from Robert C. Bates, L.L.C.

On May 14, 2012, plaintiffs filed the instant action. Plaintiffs allege the following causes of action: (1) violation of the Lanham Act under 15 U.S.C. § 1125(a), (2) unfair competition under Oklahoma common law, (3) trademark infringement in violation of Oklahoma common law, (4) violations of the Oklahoma Deceptive Trade Practices Act, Okla. Stat. tit. 78, § 51, *et seq.*, (5) violations of the Computer Fraud and Abuse Act, (6) breach of fiduciary duty, (7) breach of contract, (8) tortious interference with prospective economic advantage, (9) unjust enrichment, and (10) civil conspiracy. Both plaintiffs and defendants have now moved for summary judgment.

II.     Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

5

*Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III. Discussion

    A. Lanham Act Claim

Under the Lanham Act,

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person,
>     \*        \*        \*
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). To prevail in an action for unfair competition under the Lanham Act, a plaintiff must establish: (1) its mark is protectable, and (2) the defendant's use of an identical or similar mark is likely to cause confusion among consumers. *See Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004).

Plaintiffs and defendants both move for summary judgment as to plaintiffs' Lanham Act claim. Having carefully reviewed the parties' submissions, the Court first finds that the name Robert C. Bates, L.L.C. is protectable. Second, the Court finds that the name Commercial Insurance Brokers, L.L.C. is not an identical or similar mark to the name Robert C. Bates, L.L.C. Thus, any use of the name Commercial Insurance Brokers, L.L.C. by defendants would not be a violation of the Lanham Act.

Plaintiffs, however, assert that certain defendants have used the name Robert C. Bates, L.L.C. and that such use violates the Lanham Act. Specifically, plaintiffs identify the following specific instances of use of the name Robert C. Bates, L.L.C.: (1) a certificate of insurance identifying defendant Walt Pettit as an authorized agent of Robert C. Bates, L.L.C., (2) an email from an account manager to an insurance company regarding customers of Bates in which the account manager utilized a signature block for Robert C. Bates, L.L.C., (3) a letter relating to lease options for Robert C. Bates Insurance, (4) correspondence to customers that Commercial Insurance Brokers, L.L.C. constituted a "name change" or "simply a change of address," and (5) outlining and relying upon the history and quality of Robert C. Bates, L.L.C.'s services in presentation material to potential CIB customers. As the letter relating to lease options was written by Joe Brandt with Brandt Commercial Properties, Inc., and not by any of the defendants, the Court finds that this letter cannot support any finding of a violation of the Lanham Act because it does not involve a use of the name Robert C. Bates, L.L.C. by any of the defendants.

Plaintiffs bear the burden of proving likelihood of confusion. *See Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research*, 527 F.3d 1045, 1055 (10th Cir. 2008).

> Though likelihood of confusion is a question of fact, it is amendable to summary judgment in that [c]ourts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is likelihood of confusion.

*Id.* (internal quotations and citations omitted). Further,

> [l]ikelihood of confusion is typically evaluated according to a six-factor test in which the court considers: (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in using the mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by

> purchasers; and (6) the strength or weakness of the marks. No one factor is dispositive.

*Id.* (internal citation omitted).

Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to plaintiffs and viewing all reasonable inferences in favor of plaintiffs, the Court finds plaintiffs have not shown that the above-referenced uses of the name Robert C. Bates, L.L.C. are likely to cause confusion among consumers. Specifically, the Court finds that upon review of the correspondence to customers and the presentation materials (items 4 and 5), it is clear that CIB is a new entity separate from Robert C. Bates, L.L.C. For example, in an August 8, 2012 email from Sandy Ballantyne to Steven Wubbenhorst (APP 106), Ms. Ballantyne specifically states that "Robert C. Bates, LLC will still be in existence as a part of Insurica Insurance. . . ." Regarding the certificate of insurance and the email from an account manager utilizing a signature block that included "for Robert C. Bates, L.L.C.", the Court, having considered the factors set forth above, finds these two isolated instances are not sufficient to establish a likelihood of confusion among consumers. The evidence indicates that the use of the signature block was a simple mistake by the account manager and that the certificate was amended within a short period of time with the correct agent listed for Robert C. Bates, L.L.C.

Accordingly, the Court finds that summary judgment should be granted in favor of defendants as to plaintiffs' Lanham Act claim.

### B. Unfair Competition Claim

In order to establish an unfair competition claim based upon use of names and/or protected marks, a plaintiff must show such similarity of names that the ordinary buyer, exercising ordinary intelligence and observation in business matters, will certainly or probably be deceived. *See*

*Coalgate Abstract Co. v. Coal County Abstract Co.*, 67 P.2d 37, 38 (Okla. 1937). Plaintiffs base their unfair competition claim upon the same facts and arguments as those used in support of their Lanham Act claim. For the same reasons set forth above in relation to plaintiffs' Lanham Act claim, the Court finds that summary judgment should be granted in favor of defendants as to plaintiffs' unfair competition claim.

> C. Trademark Infringement Claim

> The elements of common law trademark or service mark infringement are similar to those required to prove unfair competition under § 43(a) of the Lanham Act. Among other things, a plaintiff must establish a protectable interest in its mark, the defendant's use of that mark in commerce, and the likelihood of consumer confusion.

*Donchez*, 392 F.3d at 1219.

Plaintiffs also base their trademark infringement claim upon the same facts and arguments as those used in support of their Lanham Act claim. For the same reasons set forth above in relation to plaintiffs' Lanham Act claim, the Court finds that summary judgment should be granted in favor of defendants as to plaintiffs' trademark infringement claim.

> D. Oklahoma Deceptive Trade Practices Act Claim

Plaintiffs assert that defendants Bates, Walt Pettit, Kim Buker, and CIB violated the Oklahoma Deceptive Trade Practices Act ("ODTPA") by: (1) passing off services provided by CIB as services provided by Robert C. Bates, L.L.C.; (2) knowingly making a false representation as to the source of such services; and (3) disparaging the services or business of Robert C. Bates, L.L.C. through false or misleading representations of fact. Defendants assert that plaintiffs have not shown any act which would constitute a deceptive trade practice under the ODTPA.

9

Having carefully reviewed the parties' submissions, the Court finds there are disputed issues of material fact regarding the circumstances surrounding the acts upon which plaintiffs base their ODTPA claim such that summary judgment should not be granted in favor of either plaintiffs or defendants. Viewing the evidence in the light most favorable to plaintiffs, the Court finds that the representations made in emails that the change from Robert C. Bates, L.L.C. to CIB was a "name change" and/or change in office location and/or "new office," the statements regarding the history and quality of Robert C. Bates, L.L.C.'s services in presentation materials to potential CIB customers, and the representations by CIB to carriers that Robert C. Bates, L.L.C./Insurica is "not capable of the service requirements of customers" and other similar statements[2] could be considered acts that would constitute deceptive trade practices. On the other hand, viewing the evidence in the light most favorable to defendants, the Court finds that these same acts could be found not to be acts that would constitute deceptive trade practices.

Accordingly, the Court finds that summary judgment should not be granted as to plaintiffs' ODTPA claim.

### E. Computer Fraud and Abuse Act Claim

Plaintiffs assert that producers of CIB, including defendants Walt Pettit, W. Sam Pettit, and Kim Buker, and those obtaining imminent employment at CIB deleted thousands of emails and documents from Robert C. Bates, L.L.C.'s computers. Plaintiffs further assert that defendants were not authorized to delete any emails, data, or other information from the computers and that many of the deletions occurred after the producer defendants had received a litigation hold letter expressly

---

[2]Defendants contend the statements made were true and truth is a defense to any allegation of misrepresentation. Having reviewed the parties' submissions, the Court finds there is a genuine issue of material fact as to whether these statements were, in fact, true.

directing them not to delete any documents or information, including emails, from their business email accounts and computers. Plaintiffs also assert that defendants' conduct caused damage to plaintiffs by impairing the integrity and/or availability of data and information contained in the Robert C. Bates L.L.C. computer system that was necessary for the company to continue fulfilling business obligations to its customers. Finally, plaintiffs assert that defendants' conduct resulted in a loss to plaintiffs that exceeds $5,000.

Defendants contend that the Computer Fraud and Abuse Act ("CFAA") does not provide a civil cause of action under 18 U.S.C. § 1030(a)(5)(A), and, therefore, plaintiffs' claim fails as a matter of law. Defendants further contend that plaintiffs have presented no evidence that any of the defendants accessed and/or deleted any information on their computers which they were not authorized to access.

Under the CFAA, a person who

> (5)(A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

violates the CFAA. 18 U.S.C. § 1030(a)(2)(5)(A). Additionally, 18 U.S.C. § 1030(g) provides, in pertinent part:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses [subclause] (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i).

18 U.S.C. § 1030(g).[3]

---

[3]Subsection (c)(4)(A)(i) provides:
(c) The punishment for an offense under subsection (a) or (b) of this

11

Upon review of § 1030(g), the Court finds that the plain language of the statute allows a private cause of action for a violation of § 1030(a)(5)(A). Subsection (g) references a violation of "this section," which refers to § 1030 as a whole, as subsection (g) does not proscribe any conduct itself. Further, the Court finds that although § 1030(g) refers to subsection (c)(4)(A), the statute does not limit civil suits to violations of § 1030(a)(5)(B). If Congress had intended to limit civil actions in this manner, it could have simply provided that civil actions may only be brought for violations of subsection (a)(5); instead, the statute provides that a claim brought under any of the subsections of § 1030 must involve one of the factors listed in the numbered clauses of subsection

---

section is –
* * *
(4)(A) except as provided in subparagraphs (E) and (F), a fine under this title, imprisonment for not more than 5 years, or both, in the case of –
(i) an offense under subsection (a)(5)(B), which does not occur after a conviction for another offense under this section, if the offense caused (or, in the case of an attempted offense, would, if completed, have caused) –
(I) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;
(II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;
(III) physical injury to any person;
(IV) a threat to public health or safety;
(V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security; . . . .
18 U.S.C. § 1030(c)(4)(A)(i).

(c)(4)(A). Further, numerous courts have found that the private cause of action under subsection (g) is not limited to violations of § 1030(a)(5)(B). *See, e.g., Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150 (5th Cir. 2006); *Yonkers, Inc. v. Celebrations The Party And Seasonal Superstore, LLC*, 428 F.3d 504 (3d Cir. 2005); *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004).

Additionally, having carefully reviewed the parties' submissions, the Court finds there are disputed issues of material fact as to whether defendants accessed and/or deleted any information on their computers which they were not authorized to delete such that summary judgment should not be granted in favor of either plaintiffs or defendants. Plaintiffs have presented evidence that defendants deleted emails from Robert C. Bates, L.L.C.'s computers which they were not authorized to delete and/or after they were advised of the litigation hold; defendants have presented evidence that no defendant deleted emails from Robert C. Bates, L.L.C.'s computers which they were not authorized to delete and/or after they were advised of the litigation hold.

Accordingly, the Court finds that summary judgment should not be granted as to plaintiffs' CFAA claim.

    F.    <u>Breach of Fiduciary Duty Claim</u>

Plaintiffs have alleged a breach of fiduciary duty claim against both defendant Bates and defendant Morris. In Oklahoma, in order to recover on a claim for breach of fiduciary duty, a plaintiff must establish: (1) a fiduciary relationship existed between the plaintiff and the defendant that created a fiduciary duty that the defendant owed to the plaintiff; (2) the defendant breached the fiduciary duty to the plaintiff; and (3) the breach of the fiduciary duty was the direct cause of damages to plaintiff. *See* OUJI-Civil – Instr. No. 26.1.

Defendants contend that Bates did not violate any fiduciary duty owed to Robert C. Bates, L.L.C.[4] Plaintiffs, on the other hand, contend that Bates did violate his fiduciary duty and that the evidence presented is sufficient to support an award of summary judgment in favor of plaintiffs. Having carefully reviewed the parties' submissions, the Court finds there is a genuine issue of material fact as to whether Bates violated the fiduciary duty he owed to Robert C. Bates, L.L.C. Specifically, the Court finds there are disputed facts as to whether Bates contacted the producers about leaving Robert C. Bates, L.L.C. and forming a new insurance company prior to his resignation. Accordingly, the Court finds that summary judgment should not be granted as to plaintiffs' breach of fiduciary duty claim against defendant Bates.

Defendants also contend that defendant Morris did not violate any fiduciary duty owed to Robert C. Bates, L.L.C. In their response, plaintiffs offer no argument in response to defendants' contention. Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to plaintiffs, and construing all reasonable inferences in favor of plaintiffs, the Court finds that plaintiffs have presented no evidence that defendant Morris violated the fiduciary duty she owed to Robert C. Bates, L.L.C. Specifically, the Court finds that plaintiffs have presented no evidence that defendant Morris had any prior knowledge of any plans – by Bates or anybody else – to form CIB and have presented no evidence that defendant Morris did anything to assist Bates in forming CIB prior to her resignation. Accordingly, the Court finds that summary judgment should be granted in favor of defendant Morris as to plaintiffs' breach of fiduciary duty claim.

---

[4]Defendants do not dispute that Bates owed a fiduciary duty to Robert C. Bates, L.L.C. prior to his resignation.

G. Breach of Contract Claim

Plaintiffs have alleged a breach of contract claim against defendants Bates, Walt Pettit, W. Sam Pettit, and Kim Buker. Specifically, plaintiffs allege defendants Bates, Walt Pettit, and W. Sam Pettit breached Section IV of the Producer Agreement, which provides as follows: "[Producer] agrees not to engage in any competitive business which may hinder or detract from the COMPANY or its business activities." Plaintiffs further allege defendant Kim Buker breached the provision of her contract with Robert C. Bates, L.L.C. which provided that she would "perform her services and devote her full time and attention to the performance of her responsibilities to promote the best interests of the company. And shall at no time become involved with any matters or take any action which will adversely affect or reflect on Company or in any way adversely affects its insurance business."

In order to recover on a breach of contract claim, a plaintiff must prove: (1) formation of a contract, (2) breach of the contract, and (3) damages as a direct result of the breach. *See Digital Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001). Having carefully reviewed the parties' submissions, the Court finds there is a genuine issue of material fact as to whether defendants Bates, Walt Pettit, and W. Sam Pettit breached their producer agreements and as to whether defendant Kim Buker breached her contract with Robert C. Bates, L.L.C. Accordingly, the Court finds that summary judgment should not be granted as to plaintiffs' breach of contract claim.

H. Tortious Interference with Prospective Economic Advantage Claim

Plaintiffs allege that certain defendants tortiously interfered with plaintiffs' legitimate business relationships with their producers, their employees, and their customers. Thus, plaintiffs are asserting a tortious interference with contractual relations claim with respect to contractual

15

relationships with their producers and employees and a tortious interference with prospective economic advantage claim with respect to relationships with customers. Both plaintiffs and defendants move for summary judgment as to these claims.

Under Oklahoma law, a tortious interference with contractual relations claim requires a plaintiff to prove that: (1) the plaintiff had a business or contractual right with which there was interference; (2) the interference was malicious and wrongful, and that such interference was neither justified, privileged, nor excusable; and (3) damage was proximately sustained as a result of the complained of interference. *See Green Bay Packaging, Inc. v. Preferred Packaging, Inc.*, 932 P.2d 1091, 1096 (Okla. 1996). Having carefully reviewed the parties' submissions, the Court finds with respect to plaintiffs' contractual relationships with their producers, there is a genuine issue of material fact as to whether there was tortious interference by Bates. Specifically, the Court finds that there are disputed facts as to whether Bates, prior to his resignation, spoke with the other producers about leaving Robert C. Bates, L.L.C. and had them execute a letter regarding their intent to disassociate with Robert C. Bates, L.L.C. With respect to plaintiffs' contractual relationships with their employees, the Court finds there is a genuine issue of material fact as to whether there was interference by the named defendants. While plaintiffs have submitted less evidence to support a finding of interference in relation to their employees, the Court finds, viewing the evidence in the light most favorable to plaintiffs and construing all reasonable inferences in favor of plaintiffs, that plaintiffs have submitted sufficient evidence to create a genuine issue as to whether there was tortious interference. Accordingly, the Court finds that summary judgment should not be granted as to plaintiffs' tortious interference with contractual relations claims regarding their producers and employees.

Under Oklahoma law, a tortious interference with prospective economic advantage claim requires a plaintiff to prove: (1) the existence of a valid business relation or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the party whose relationship has been disrupted. *See Gonzalez v. Sessom*, 137 P.3d 1245, 1249 (Okla. Civ. App. 2006). Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to plaintiffs, and construing all reasonable inferences in favor of plaintiffs, the Court finds that plaintiffs have not produced sufficient evidence to create a genuine issue of material fact as to whether plaintiffs had a valid business relation or expectancy with the customers. While the parties dispute who "owned" the commissions from the insurance policies, the evidence is not disputed as to whom the customers belonged. The producer agreements, as well as the deposition testimony of plaintiffs, all clearly show that the customers belonged to the producers. Because the customers were the producers' customers, the Court finds that plaintiffs cannot establish the first element of their tortious interference with prospective economic advantage claim. Accordingly, the Court finds that summary judgment should be granted in favor of defendants as to plaintiffs' tortious interference with prospective economic advantage claim regarding the customers.

I. Unjust Enrichment Claim

Defendants contend that plaintiffs' unjust enrichment claim is barred by the statute of limitations. Specifically, defendants contend that because plaintiffs' unjust enrichment claim is premised on the PSA and because the PSA expired by its terms no later than January 21, 2006, any claim premised upon the PSA must have been asserted no later than January 21, 2011. Plaintiffs

contend that their claim is not barred by the statute of limitations. Specifically, plaintiffs assert that the discovery rule applies in this case and the statute of limitations was tolled until such time as a reasonable person under the circumstances of the case would have discovered the injury and the resulting claim. Plaintiffs further assert that the harm that serves the basis for plaintiffs' unjust enrichment claim – receipt of producer commissions – did not occur until August 10, 2012 and continued thereafter. Having carefully reviewed the parties' submissions, the Court finds that it is unclear at this stage of the proceedings when, exactly, plaintiffs discovered the harm that serves as the basis for plaintiffs' unjust enrichment claim. Therefore, the Court finds that defendants are not entitled to judgment as to plaintiffs' unjust enrichment claim based upon the statute of limitations at this time.

Under Oklahoma law, "before a party may recover unjust enrichment, there must be an enrichment to another coupled with a resulting injustice." *Teel v. Pub. Serv. Co. of Okla.*, 767 P.2d 391, 398 (Okla. 1985) (superseded by statute on other grounds). Both plaintiffs and defendants have moved for summary judgment as to plaintiffs' unjust enrichment claim. Because there are numerous disputed issues of fact regarding the circumstances surrounding the producers leaving Robert C. Bates, L.L.C. and forming CIB and regarding the circumstances involved in the purchase of Robert C. Bates, L.L.C. by Insurica, and specifically what Insurica believed it was purchasing, the Court finds that summary judgment as to plaintiffs' equitable unjust enrichment claim is inappropriate at this time.

Finally, defendants contend that plaintiffs are estopped from asserting an unjust enrichment claim. Specifically, defendants assert, without citing any statutory or case law, that plaintiffs waived any unjust enrichment claim by continuing to deposit the commissions into the producers' accounts.

18

Having carefully reviewed the parties' submissions, the Court finds defendants have not set forth any basis for finding estoppel in this case. Accordingly, the Court finds that plaintiffs are not estopped from asserting their unjust enrichment claim.

### J. Civil Conspiracy Claim

> Actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.

*Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158, 175 (Okla. 2008) (internal quotations and citations omitted).

Defendants contend that plaintiffs cannot establish the first three elements of a civil conspiracy claim. Specifically, defendants contend that the evidence establishes that there was no discussion or communication among them concerning any specific goal aimed at causing any injury to plaintiffs and certainly no pre-resignation agreement among them to establish a competing agency. Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to plaintiffs, and construing all reasonable inferences in favor of plaintiffs, the Court finds that plaintiffs, although barely, have submitted sufficient evidence to create a genuine issue of material fact as to whether defendants conspired to establish a competing insurance agency. Plaintiffs have presented evidence that Bates spoke with the other producers some time prior to his resignation about leaving Robert C. Bates, L.L.C. and starting their own insurance agency. Accordingly, the Court finds that summary judgment should not be granted as to plaintiffs' civil conspiracy claim.

IV. Conclusion

For the reasons set forth above, the Court:

(A)  DENIES plaintiffs' Motion for Summary Judgment [docket no. 167], and

(B)  GRANTS IN PART and DENIES IN PART defendants' Motion for Summary Judgment [docket no. 164] as follows:

   (1)  The Court GRANTS defendants' Motion for Summary Judgment as to plaintiffs' Lanham Act claim, unfair competition claim, trademark infringement claim, breach of fiduciary duty claim against defendant Debbie Morris, and tortious interference with prospective economic advantage claim regarding the customers, and

   (2)  The Court DENIES defendants' Motion for Summary Judgment as to plaintiffs' Oklahoma Deceptive Trade Practices Act claim, Computer Fraud and Abuse Act claim, breach of fiduciary duty claim against defendant Bates, breach of contract claim, tortious interference with contractual relations claims regarding plaintiffs' producers and employees, unjust enrichment claim, and civil conspiracy claim.

**IT IS SO ORDERED this 1st day of August, 2014.**

*[signature]*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE